UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:16-cr-80090-DTKH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT J. WOLFF and
CLIFFORD ERIC LUNDGREN,
    Defendants.
_____/

**DEFENDANT, CLIFFORD ERIC LUNDGREN'S,
MOTION TO DISMISS INDICTMENT,
OR IN THE ALTERNATIVE, TO SUPPRESS EVIDENCE
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Clifford Eric Lundgren, hereby moves this Honorable Court for an order dismissing the indictment herein with prejudice or, in the alternative, suppressing case dispositive evidence lost by the government and recently substituted with new and wholly unreliable evidence. As explained herein, the Court should dismiss this indictment based on: (i) the extreme prejudice caused by the lost evidence and the wholly unreliable substitute therefor; (ii) the government's inability to provide Mr. Lundgren with the government's original and case dispositive evidence to determine whether exculpatory evidence and/or impeachment material has been deleted from the government's production; (iii) the government's almost four-year delay in bringing this prosecution after the original seizure of the now lost evidence, (iv) the government's failure to provide discovery under Federal Rule of Criminal Procedure 16; and (v) the government's initial misrepresentation to the Court and delay in informing the Court and Mr. Lundgren of the loss of case dispositive evidence and other misconduct concerning this evidence.

As an alternative, the Court should supress all evidence of all emails by and to Mr. Lundgren as inadmissible under Federal Rules of Evidence 1003 and 1004 and as violative of Rule 16 of the Federal Rules of Criminal Procedure.

I.   **SUMMARY OF THE ARGUMENT**

The government has lost evidence which it concedes is case dispositive of its prosecution against Mr. Lundgren. In fact, the lost evidence is more than just material; the government's entire prosecution is predicated upon the lost evidence. The original (lost) evidence is a hard drive containing a supposed mirror image from 2012 of the hard drives of two seized laptop computers owned by Mr. Lundgren's Co-Defendant, Robert J. Wolff ("Wolff"), who is cooperating with the government in exchange for leniency. After imaging the laptop computers in 2012, the government returned the laptops to Wolff for his unfettered personal and business use. In September 2016 – nearly four years after the original seizure and imaging of the laptops - the government authored an internal government report as to the loss of its hard drive. It is altogether possible that at the time of the Grand Jury's indictment on June 7, 2016, the government's primary evidence was lost, making any testimony to the Grand Jury regarding the emails entirely inappropriate.[1]  *See* Fed. R. Crim. P. 6(a)(3)(E)(ii)("The court may authorize disclosure . . . of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."). Any such inappropriate testimony to the Grand Jury warrants dismissal of the indictment.

In a misguided effort to replace the lost hard drive, the government has recently re-imaged <u>one</u> of Wolff's laptop computers – after four years of Wolff's continuous business and personal use of the laptops – which, by its portability, could have been accessed (or tampered

---

[1] Mr. Lundgren hereby requests a copy of the Grand Jury testimony to assess whether the government disclosed to the Grand Jury that it had lost its case dispositive evidence.

with) by third parties. The second laptop originally imaged by the government was not re-imaged, and no evidence is available from that laptop computer. The government freely admits that Wolff's laptop that was recently re-imaged is no longer the same as when it was seized and imaged in 2012. Shockingly, despite repeated requests, the government refuses – in violation of Rule 16(a)(1)(E) – to permit Mr. Lundgren to inspect the actual laptop that the government recently reimaged and intends to use in its case-in-chief as a substitute for the (lost) case dispositive evidence.

The government's use of the lost evidence or the substituted new evidence is extremely prejudicial to Mr. Lundgren, because the government's initial hard drive of 2012 was never produced to Mr. Lundgren for his analysis. Rather, the government produced only copies of documents and information allegedly downloaded from that hard drive. Without the hard drive, Mr. Lundgren was never able to verify the authenticity or accuracy of any of government's documents purportedly derived from the 2012 image of Wolff's laptops. Without inspection and analysis of the original laptop, there is no way for Mr. Lundgren to assess whether the government's copy of the hard drive contained exculpatory evidence that was never provided to him. Moreover, Mr. Lundgren cannot now discern the accuracy of the government's new image of the hard drive, that is, whether Wolff - who has been granted even more concessions in exchange for voluntarily providing his laptop – has destroyed any exculpatory evidence (*for example, proof of the fact that each restore disc purchased by Wolff was to be supplied to a computer with the right to have a free restore disc*) or impeachment material to attack Wolff's credibility, or whether any information or documents on his laptop have been otherwise deleted, altered or modified since its original seizure in 2012.

3

Finally, the government has provided no information as to how it lost the original hard drive – <u>before</u> Mr. Lundgren had an opportunity to analyze it.  On information and belief, an internal investigation is currently pending at the Office of Homeland Security and the United States Attorney's Office.  The computer forensic agent, Special Agent David R. Malone - who originally analyzed and imaged Wolff's laptop computers and who lost the government's hard drive - has been removed from the case, and a new forensic analyst, Special Agent Brian Ray, has been assigned.

The government's use of the 2016 mirror image of Wolff's laptop computer is totally unreliable, cannot be authenticated, and is extremely prejudicial to Mr. Lundgren and is therefore, inadmissible. *See* Fed. R. Evid. 1001.  Further, the government is violating Mr. Lundgren's due process rights through use of this unreliable evidence. *See California v. Trombetta, 467 U.S. 479, 485*, (1984).  The Court should therefore dismiss this prosecution, or at the very least suppress any evidence of Wolff's laptop computers – from 2012 or 2016.

## II. STATEMENT OF FACTS SUPPORTING THE DISMISSAL

On October 24, 2012, the government executed a search warrant on the residence of Co-Defendant, Wolff, pursuant to which the government seized Wolff's two laptop computers.  On October 29, 2012, the government relinquished Wolff's two laptop computers to its former computer forensic agent for forensic analysis.  See Department of Homeland Security Report of Investigation ("Lost Evidence Report") dated September 28, 2016 (Exhibit A), at p. 1-2.

The government's computer forensic agent analyzed the hard disc drives in Wolff's laptop computers and uploaded a mirror image of the information and documents on the two disc drives to a single hard disc drive (the "2012 Hard Drive Copy").  Exhibit A, at p. 2.  Upon completion of the forensic analysis, the forensic agent archived the 2012 Hard Drive Copy in the

government's West Palm Beach office and returned Wolff's two laptop computers to Special Agent Richichi. *Id*.

Significantly, the government did not preserve Wolff's laptop computers. "Mr. Wolff asked for his computer back because he has a business, and the Customs supervisor gave Mr. Wolff the computer back, so we are without a computer, the original." Transcript of November 14, 2016 hearing (Exhibit B), at p. 5. Rather, presumably in late 2012 or early 2013, the government unconditionally returned the two laptop computers to Wolff. *Id.*

On June 7, 2016 – almost four years after the seizure of the now lost evidence - the Grand Jury issued an indictment against Wolff and Mr. Lundgren for alleged Conspiracy to Traffic in Counterfeit Goods; Trafficking in Counterfeit Goods, and Criminal Copyright Infringement. The government is only actively prosecuting these charges against Mr. Lundgren, because Wolff is cooperating and will likely enter a plea of guilty.

Significantly, the Lost Evidence Report provides no information as to <u>when</u> the 2012 Hard Drive Copy was lost. A question must therefore be raised as to whether – at the time of the Grand Jury presentation - the government was in possession of the 2012 Hard Drive Copy. The validity of any testimony to the Grand Jury – upon which this indictment is based – is therefore suspect.

It is undisputed that the government never produced to Mr. Lundgren (for copying and/or inspection) the 2012 Hard Drive Copy. Exhibit B, at pp. 5, 13-14. The government produced only copies of the documents and information allegedly downloaded from the 2012 Hard Drive Copy. Exhibit B, at p.5. These documents were selected by the government and did not include all material on the imaged drive. Without the original image, Mr. Lundgren cannot review the government's evidence for additional material that could be used as impeachment of Wolff or to

attack Wolff's credibility. This has become imperative now, as the government has advised that Wolff's testimony is necessary for the government to have any possibility of using the emails from the lost hard drive. The government admits that the 2012 Hard Drive Copy is necessary to authenticate what it believes to be case dispositive (and "the most important") evidence in this case. Exhibit B, at pp. 4-5, 12. However, sometime prior to its September 28, 2016 report – before ever providing the 2012 Hard Drive Copy to Mr. Lundgren for his independent analysis - the government lost the 2012 Hard Drive Copy. Exhibit A, p. 2; Exhibit B, at p. 5.

Demonstrating a complete lack of candor and judgment (and possibly prosecutorial misconduct) on the part of the government, at an October 14, 2016 calendar call, the government announced it was "ready for trial," despite the loss of its case dispositive evidence. In fact, despite its knowledge of the Lost Evidence Report dated September 28, 2016, at the calendar call sixteen (16) days later, the government failed to advise the Court or Mr. Lundgren's counsel of the loss of its critical evidence.[2] Rather, a month after the Lost Evidence Report was issued (at the second calendar call on October 27, 2016), the government first advised the Court of an undisclosed issue as to the trial date and finally fully briefed Mr. Lundgren's counsel of the loss on November 1, 2016. More specifically, it was six weeks after the Lost Evidence Report and two weeks after the government misleadingly claimed it was trial-ready, that it first disclosed to Mr. Lundgren's counsel it intends to introduce a copy of one of the laptop computers that had

---

[2] On July 13, 2016, that is, prior to the calendar call, undersigned counsel filed a Notice of Unavailability, effective October 3, 2016 through November 1, 2016. [DE 25]. At the time of the calendar call, counsel was out of the country and attended by telephone. At that time - having been out of her office since October 3, 2016 - counsel was unaware that the Lost Evidence Report had been produced by U.S. Mail on October 11, 2016 to her Miami office, integrated with over 60 pages of other discovery. Thus, counsel did not question the government's representation that it was ready for trial at the October 14, 2016 calendar call. More significantly, the Notice of the Supplemental Discovery which included the Lost Evidence Report (misleadingly identified as only a "Report dated 9/28/16") was not filed with the Court until November 4, 2016—three weeks after announcing it was ready for trial.

been out of its possession for four years. Moreover, when the government finally gave the Court and Mr. Lundgren record notice of the lost evidence, it did so with a November 4, 2016 filing which merely made an innocuous reference to a September 28, 2016 report. DE- 34, attached as Exhibit C. The Government's November 4, 2016 filing – already over a month after the government's report as to its loss of case dispositive evidence – also failed to properly alert the Court or defense counsel of this highly critical event.

After learning of the lost evidence, the government requested Wolff's further assistance. Specifically, in exchange for extraordinary cooperation credit (most likely not to include any term of imprisonment), the government obtained permission from Wolff to re-image only one of his laptop computers. Exhibit B, at pp. 5 - 6. It is undisputed that Wolff has been using the laptop computer for his personal and business use since the government seized and imaged it in 2012. Exhibit B, at p.6. And, on information and belief, there was at least a one-week delay between the government's recent request to Wolff to re-image his laptop and the actual re-image of Wolff's laptop computer, giving rise to even further potential manipulation of the evidence by Wolff. This time lapse is critical as it provided Wolff time to delete or alter the laptop prior to providing to the government for imaging. It is therefore undisputed that the newly re-imaged laptop computer – which Wolff has had possession of for four years - is not the same computer that was seized. The government concedes "[w]e don't have a mirror image anymore, because the mirror image as it stands today is not the same as the mirror image was at the time we seized it." Exhibit B, at p.6.

Despite the inherent unreliability of the new mirror image of the laptop, the government has produced to Mr. Lundgren – and intends to introduce in evidence - a copy of the hard drive which imaged Wolff's laptop computer in 2016 (the "2016 Hard Drive Copy"). Exhibit B, at pp.

6, 8, 15.  In a good faith effort to determine the reliability of the 2016 Hard Drive Copy, Mr. Lundgren's counsel has requested on at least two occasions – by email dated December 7, 2016 and in person on December 20, 2016 - to inspect the laptop computer that was imaged in the 2016 Hard Drive Copy.  The government has refused, however, to permit Mr. Lundgren to inspect the laptop computer which it imaged to the 2016 Hard Drive Copy.  When asked why it is obstructing Mr. Lundgren from inspecting the laptop, the government quixotically replied it was for "obvious reasons."  Further, the government has also failed to provide Mr. Lundgren with a <u>bootable</u> ghost type single image of the hard drive (which his expert requires for his analysis), despite email requests dated December 20, 2016 and December 27, 2016 and a request in person on December 20, 2016.  *See* emails between Mr. Lundgren's counsel and the government attached as Composite Exhibit D.

Again, because he was never given the opportunity to inspect and analyze the 2012 Hard Drive Copy, Mr. Lundgren cannot compare the 2016 Hard Drive Copy to the lost evidence or otherwise analyze its authenticity.  Further, without inspecting the actual laptop that the government recently re-imaged, Mr. Lundgren cannot verify whether any exculpatory/Brady evidence from the laptop was not copied to the 2016 Hard Drive Copy. Considering Wolff's cooperation with the government, combined with his possession of the laptop for the last four years, and the week plus delay in providing the laptop upon the recent request, there is an obvious and serious risk of the deletion of exculpatory and impeachment evidence and/or other evidence tampering.

Demonstrating the gross unreliability of the 2016 Hard Drive Copy, the government previously submitted to Mr. Lundgren an Examination Report dated January 14, 2013 (pertinent

8

excerpts of which are attached as Exhibit E)[3], prepared by the now removed Special Agent David Malone, which detailed **927** emails from the 2012 Hard Drive Copy that were "potentially relevant" to the government's case against Mr. Lundgren. The government has now submitted a spreadsheet (Exhibit F) of only **280** emails downloaded from the 2016 Hard Drive Copy. And, of the only 280 emails, 18 of the emails were sent or received <u>after</u> the government first imaged Wolff's laptop computers and, therefore, could not have been included on the 2012 Hard Drive Copy. That is, the 2016 Hard Drive Copy comprises only 28% of the prior "case dispositive" evidence.

In response to the glaring disparity between the 2012 Hard Drive and the 2016 Hard Drive, the government asserts that the missing 262 (or 72%) of the emails were duplicates. Mr. Lundgren cannot verify this conclusory assertion, because he was never permitted access to the original 2012 Hard Drive and therefore has no way of comparing the 262 emails on the 2016 Hard Drive Copy to the original evidence. Further, Mr. Lundgren objects to any admission of the new 18 emails.

Based on Mr. Lundgren's inspection of the 2016 Hard Drive Copy, there is reason to believe that Wolff's emails – imaged to both the 2012 Hard Drive Copy and 2016 Hard Drive Copy – were modified, giving rise to evidence tampering. *See* Lundgren Expert Report attached as Exhibit G. Absent the lost 2012 Hard Drive Copy, there is no way to ever locate the actual unmodified emails.

As a matter of law, the Court should dismiss this prosecution with prejudice, because of the unfair prejudice to Mr. Lundgren from the government's loss of the case dispositive evidence

---

[3] The entire Examination Report is 1,351 pages long. If the Court would like to review the Examination Report in its entirety, Mr. Lundgren can provide the Court with a flash drive containing a copy of the entire document.

and the unreliability of the proposed substitute evidence. Alternatively, the Court should suppress any evidence of Wolff's laptop computers.

### III. ARGUMENT: THE COURT SHOULD DISMISS THE PROSECUTION OR SUPRESS ANY EVIDENCE OF THE LAPTOP COMPUTER

#### A. THE 2016 HARD DRIVE COPY IS INADMISSIBLE AND NOT THE BEST EVIDENCE

Pursuant to Federal Rule of Evidence 1003, a duplicate – such as the 2016 Hard Drive Copy – is inadmissible, where, as here, Mr. Lundgren can demonstrate a genuine issue as to the: (i) authenticity of the lost original; (ii) trustworthiness of the copy; and (iii) fairness of substituting the duplicate for the original. *See United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980).

Mr. Lundgren never had possession of the original seized laptop computers or the 2012 Hard Drive Copy, but rather was only provided copies of the emails allegedly downloaded from the government's lost hard drive. Mr. Lundgren therefore never had an opportunity to review the original emails - upon which the indictment was purportedly based – for accuracy or determine whether they were electronically modified or falsely manufactured. Because Mr. Lundgren was never able to authenticate the emails originally produced by the government, he cannot now verify the trustworthiness of the 2016 Hard Drive Copy. That is, Mr. Lundgren cannot analyze whether the newly substituted copy for the lost evidence is an accurate copy of the original information and documents that existed on Wolff's laptop computer in 2012. Similarly, Mr. Lundgren cannot properly cross-examine Wolff's credibility to authenticate the evidence absent review of the original evidence.

It is outrageous to assume that four years later, Wolff's laptop computer constitutes the same – or even a reliable copy of - evidence that formed the basis for the indictment against Mr. Lundgren. *First*, the laptop computer – by its portability – could have been accessed by third

parties, in addition to Wolff.  *Second*, Wolff has been cooperating with the government in exchange for leniency.  During the past four years – and since the government's recent request for further cooperation from him –Wolff certainly had an interest in manipulating or fabricating evidence on his computers to shift any blame to Mr. Lundgren.  *Third*, the 2016 Hard Copy contains only 262 of the 927 emails which were purportedly on the lost 2012 Hard Drive Copy.  *Fourth*, 18 of the emails were created <u>after</u> the government seized Wolff's laptops, giving rise to concerns of tampering.  *Fifth*, the laptop computer has aged an additional four years since its initial seizure, creating further doubt as to its reliability.  *Sixth*, Mr. Lundgren has been denied the right to even inspect the laptop computer.  *Seventh*, Mr. Lundgren has not been provided the opportunity to review the original image for critical evidence needed in defense of his case - to include Brady information and impeachment material relevant to the credibility of Wolff's testimony.  *Eighth*, Wolff's second laptop was not re-imaged or made available for inspection and may also contain relevant material to Mr. Lundgren's defense.  Mr. Lundgren is severely prejudiced by any use of this wholly unreliable evidence.

Pertinent to the (lost) evidence in this prosecution, the National Institute of Justice (NIJ) provides law enforcement and prosecutors with guides and recommendations regarding digital evidence.  One NIJ-sponsored report states:

> Documentation of digital evidence incorporates the twin issues of *authentication* and *chain of custody*. Authentication is the process of establishing that the evidence is actually what its proponents claim it to be. The party putting forth the evidence is required to demonstrate that the item is genuine.... As part of the authentication process, chain of custody assures that digital evidence has been preserved in its original form.... Finally, chain of custody involves documenting how the evidence was stored, who has handled the evidence, and who had access.

*Digital Evidence and the U.S. Criminal Justice System - Identifying Technology and Other Needs to More Effectively Acquire and Utilize Digital Evidence,* NIJ 248770.  Clearly, the

government's attempt to introduce a copy of one of the laptop computers that was outside the government's chain of custody for four years – and subject to a myriad of opportunities for manipulation – as a substitute for lost evidence that was never authenticated is entirely contrary to these standards for authenticity of digital evidence.

The 2016 Hard Drive is, therefore, inadmissible under Fed. R. Evid. 1003. For all the foregoing reasons that the 2016 Hard Drive Copy is inadmissible under Fed. R. Evid. 1003, it is also inadmissible under the Best Evidence Rule. *See* Fed. R. Evid. 1004; *United States v. Jordano*, 521 F.2d 695, 698 (2d Cir. 1975).

As a matter of law, therefore, the Court should dismiss the prosecution, because it is principally based upon lost evidence and inadmissible copies thereof.

**B.     THE GOVERNMENT'S PREJUDICIAL DISCOVERY VIOLATIONS**

The government has committed multiple discovery violations which greatly prejudice Mr. Lundberg's right to adequately inspect all the evidence to be used against him and to discover any exculpatory evidence. Specifically,

- At no time during discovery in this case did the government ever produce to Mr. Lundgren the 2012 Hard Drive Copy, which raises the question of whether it was lost prior to the June 7, 2016 indictment.

- After notifying the Court and Mr. Lundgren of the loss of the 2012 Hard Drive Copy and its intent to substitute the 2016 Hard Drive Copy, the government has failed and refused to permit Mr. Lundgren to inspect the laptop computer that the government has now re-imaged as a substitute for its lost and case dispositive evidence.

- Further, the government has totally denied Mr. Lundgren access to Wolff's other laptop computer that was previously imaged on the 2012 Hard Drive Copy, but is now curiously omitted from the image on the 2016 Hard Drive Copy.
- To date, the government has failed to provide Mr. Lundgren with an image of Wolff's laptop computer in a bootable ghost type single image format which Mr. Lundgren deems appropriate for his expert's analysis.

In addition to all these discovery violations, 18 new emails from or to Mr. Lundgren were discovered that did not exist on the 2012 Hard Drive Copy. *See* Exhibits E, F. The use of any such emails is unfairly prejudicial to Mr. Lundgren. Prior to this date, these newly discovered emails were not produced to Mr. Lundgren, thereby constituting a further discovery violation. Fed. R. Crim. P. 16 (a)(1)(E); *see United States v. Rodriguez*, 799 F.2d 649, 654 (11th Cir. 1986) (finding a mistrial where the government failed to produce all documents seized from the defendant).

The government's prior failure to permit Mr. Lundgren to inspect the 2012 Hard Drive Copy and produce any emails now contained in the 2016 Hard Drive Copy, combined with its refusal to permit Mr. Lundgren to inspect Wolff's two laptop computers - including the laptop which is purportedly imaged in the 2016 Hard Drive Copy - constitute highly prejudicial discovery violations, regardless of the government's intent to use all or any such new evidence and warrants dismissal.

**C.   THE GOVERNMENT'S USE OF THE 2016 HARD DRIVE COPY VIOLATES LUNDGREN'S DUE PROCESS**

As reiterated by the U.S. Supreme Court in *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)), "A defendant has a constitutionally

protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed."

There is no dispute whether the lost 2012 Hard Drive Copy is material to this prosecution. Exhibit B, at pp. 4-5, 12. Specifically, the government admits that the lost hard drive contains "the most important evidence in the case" and is "case dispositive." Exhibit B, at. pp. 4, 12.

> When primary evidence is destroyed and secondary evidence is used, the latter's admissibility at trial turns on a balancing test aimed at insuring a fair trial. The court "must weigh the extent of the Government's culpability [for the lost evidence] and the degree of prejudice to the appellant."

*United States v. Lillard*, 929 F.2d 500, 504 (9th Cir. 1991) (citations omitted) (quoting *United States v. Kennedy,* 714 F.2d 968, 975 (9th Cir.)). In contrast to the extreme unfairness to Mr. Lundgren by the government's use of the wholly unreliable evidence substituted for the lost evidence, in *Lillard*, the defendant failed to show any prejudice by use of evidence substituted for lost evidence. *Lillard*, 929 F.2d at 504.

The lost 2012 Hard Drive Copy is case dispositive, and its disappearance foreclosed Mr. Lundgren's ability to inspect it or any copies substituted therefor, namely the 2016 Hard Drive Copy. Accordingly, there can be no comparable evidence to the lost evidence.

> A criminal defendant moving for dismissal on the basis of spoliation of the evidence must make a two-pronged showing that the evidence possessed exculpatory value "that was apparent before [it] was destroyed" and that it was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

*United States v. Greenberg,* 835 F.3d 295, 303 (2d Cir. 2016) (quoting *Trombetta,* 467 U.S. at 489).

In *Greenberg*, the government's failure to image all the data from computers and a failure to preserve the original computers and servers was not fatal to its prosecution based upon such

14

evidence, because the defendant – unlike Mr. Lundgren - failed to demonstrate that the evidence was materially exculpatory. *Greenberg*, 835 F.3d at 303 – 305. In contrast, the government knew that Mr. Lundgren had no opportunity to inspect and analyze the "case dispositive" 2012 Hard Drive Copy prior to its disappearance and therefore cannot eliminate the possibility of exculpatory evidence, impeachment material, and any other information relevant to Mr. Lundgren's defense.

Mr. Lundgren's due process rights have been violated threefold: *First*, because he was never allowed to inspect the "case dispositive" 2012 Hard Drive Copy and therefore was never able to analyze whether it comprised an accurate and authentic copy of the information and documents contained within the laptop computers. *Cf. Trombetta*, 467 U.S. at 480–81 ("The Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment."). *Second*, absent his evaluation of the 2012 Hard Drive Copy, Mr. Lundgren has no way of assessing whether the 2016 Hard Drive Copy constitutes a comparable copy of the originally seized (and lost) evidence. *Third*, Mr. Lundgren cannot assess whether any exculpatory evidence or impeachment evidence against Wolff has been deleted from the 2016 Hard Drive Copy without inspecting the laptop computer and the 2012 Hard Drive Copy (which includes the 2012 image of the second laptop computer now missing from the 2016 Hard Drive Copy).

In *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988), the U.S. Supreme Court reasoned that where "potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Id*. In contrast to the *Youngblood* case, the critical import of the lost 2012 Hard Drive Copy is undisputed.

The government has denied Mr. Lundgren his constitutional right to confront the evidence to be used against him. The Court should therefore conclude that the Government's loss of the 2012 Hard Drive Copy constitutes a due process violation warranting dismissal of the prosecution. *Cf. United States v. Gayle,* 608 F. App'x. 783, 791 (11th Cir. 2015) (denying a motion to dismiss where – unlike in this case - the defendant failed to demonstrate the materiality of the lost evidence); *United States v. Price*, 298 F. App'x. 931, 937 (11th Cir. 2008) (finding no denial of due process where – unlike in this case - the lost evidence was not potentially exculpatory and there were no questions as to the reliability of comparable substituted evidence).

## IV. CONCLUSION

For all the foregoing reasons, the Court should dismiss the Indictment with prejudice, or in the alternative, suppress any evidence of Wolff's laptop computers.

                Respectfully Submitted,

                s/ Lilly Ann Sanchez
                Lilly Ann Sanchez, Esquire
                Florida Bar No. 195677
                lsanchez@thelsfirm.com
                **The LS Law Firm**
                Four Seasons Tower, 12th Floor
                1441 Brickell Avenue
                Miami, Florida 33131
                T: 305-503-5503
                F: 305-503-6801
                *Attorneys for Defendant, Clifford Eric Lundgren*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF on January 3, 2017, on the following parties and counsel:

Lothrop Morris, Assistant U.S. Attorney
500 South Australian Ave, Suite 400
West Palm Beach, Florida 33401

Randee J. Golder, Esquire
rjgolder@bellsouth.net
Randee J. Golder, P.A.
P.O Box 243756
Boynton Beach, Florida 33424
T:  561-503-4398
*Attorneys for Defendant, Robert J. Wolff*