UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-80090-CR-Hurley/Hopkins

UNITED STATES OF AMERICA,

vs.

**ROBERT J. WOLFF, and
CLIFFORD ERIC LUNDGREN,**

       Defendants,
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

**COMES NOW**, the United States of America, by and through the undersigned counsel, hereby files its Sentencing Memorandum and states as follows:

Protecting Intellectual Property (IP) rights is essential to fostering the innovation and creativity that fuels the economy in the United States. IP rights create incentives for entrepreneurs, artists, firms, and investors to commit the necessary resources to research, develop, and market new technologies and creative works. As one court observed, "[t]he future of the nation depends in no small part on the efficiency of industry, and the efficiency of industry depends in no small part on the protection of intellectual property." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 180 (7th Cir. 1991).

1

The defendants were convicted for criminal copyright infringement, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(a ) and (b)(1).  The defendants in this matter were also convicted for conspiracy to traffic in counterfeit goods, in violation of Title 18, United States Code, Section 2320( a)(1). These convictions carry maximum statutory sentences of five and ten years respectively. The corresponding advisory sentencing guidelines section is U.S.S.G. § 2B5.3.

## MEMORANDUM OF LAW

The base offense level for these convictions is 8. U.S.S.G. § 2B5.3(a). Based on the facts of this case, the specific offense characteristic directs this Court to consider increasing the base offense level by a number of levels corresponding to the infringement amount. [U.S.S.G. § 2B5.3(b)(1)(B), directing a cross-reference to U.S.S.G. § 2B1.1.] The special offense characteristics in U.S.S.G. § 2B5.3(b)(3)(A) applies because the items involved the manufacture or importation of the infringing items and increases the base offense level by two levels.

## INFRINGEMENT AMOUNT

With respect to the infringement amount used to calculate the total offense level, the infringement amount should be the retail value of the infringed items. U.S.S.G. § 2B5.3, n. 2. "The infringement amount is the retail value of the infringed item, multiplied by the number of infringing items." U.S.S.G. § 2B5.3, n. 2(A) (emphasis added). The guidelines direct that amount to be used in the guidelines

calculations if one of any eight enumerated situations exist. *Id*. Three of the circumstances exist in the instant case.

    a. "The infringing item (I) is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item; or (II) is a digital or electronic reproduction of the infringed item. The United States expects the testimony of Jonathan McGloin, who represents Microsoft Corporation the trademark holder in the instant case, will demonstrate that the infringing item (I) is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item. In an email correspondence between WOLFF and LUNDGREN discussing the quality of the infringing item, LUNDGREN said, "[t]hese issues are VERY VERY minor... You would have to be an expert with a magnifying glass to know and/or see such tiny differences... ) You must have been trying to supply these units to Amazon directly or someone whom is an expert in this field... Anyone whom buys these would not notice a O or 0 when it comes to a font this size "U.S.A. (or) U.S.A" C'mon Bob, you should be able to sell these units to anyone whom is not trying to sell them directly back to Bill Gates. If they are not perfect, it is because the unit that we recieved from the USA retail on Ebay was not perfect... We made an identical copy of said unit from the same factories that manufacture for Dell." Thus, LUNDGREN himself describes the infringing items as "identical"  *See* attachment A.

    b. "The retail value of the infringed item provides a more accurate assessment of the pecuniary harm to the copyright or trademark owner than does the retail value

of the infringing item." U.S.S.G. § 2B5.3, n.2(A)(v). The United States intends to present evidence at the sentencing hearing that the more accurate assessment of harm to the victims in this case is the retail value of the infringed item. Mr. McGloin is expected to testify that the pecuniary loss to Microsoft is vastly greater than the much lower prices for which the defendants sold the counterfeit goods.

    c. "A case under 18 U.S.C....§ 2320 that involves a counterfeit label, patch, sticker, wrapper, badge, emblem, medallion, charm box, container, can, case, hangtag, documentation, or packaging of any type or nature (I) that has not been affixed to, or does not enclose or accompany a good...; and (II) which had it been so used, would appear to a reasonably informed purchaser to be affixed to, enclosing or accompanying an identifiable, genuine good." U.S.S.G. § 2B5.3, n.2(A)(vii).

    In This case, the Court should use the retail value of the infringed item to calculate the loss because it is covered by the enumerated provisions. In *United States v. Lozano*, 490 F.3d 1317, 1321-22 (11th Cir. 2007), the Eleventh Circuit held that `the language provided that the infringing item "is, or appears to a reasonably informed purchaser to be, identical or substantially equivalent to the infringed item" is critical.' *Lozano*, 490 F.3d at 1321-22. The *Lozano* court affirmed the district court finding that the infringing and infringed items were essentially indistinguishable and thus concluded that use of the retail value of the infringed item was appropriate.

    Defendants' cannot claim that use of the infringed item's retail value over-represents their culpability and ignores the "nature and magnitude of the pecuniary

4

harm." U.S.S.G. § 2B5.3, at comment. backg'd. They cannot claim that Microsoft suffered minimal pecuniary injury. Microsoft lost the sale of its software as a direct consequence of the defendants' actions. In *Lozano,* the Eleventh Circuit discussed the case of *United States v. Yi*, 460 F.3d 623 (5th Cir.2006), in which the Fifth Circuit reversed the district court's use of the retail value of the infringed items because "[t]he lack of record evidence on pecuniary harm to the victim companies weighs against the district court's decision to use the infringed item value." The Eleventh Circuit found that "crucial to the Fifth Circuit's reversal of the lower court was the fact that the infringing and infringed items were distinguishable to a reasonably informed purchaser." The *Lozano* court concluded that it would be inappropriate to follow *Yi* because the enumerated provisions regarding retail value of the infringed item apply and therefore the "catch-all" provision did not apply. Thus it was not appropriate to use the retail value of the infringing item to calculate the loss. The Court should reach the same result hear and apply the enumerated provisions regarding retail value and find that the loss per item is $25.

## GOVERNMENT'S RECOMMENDED GUIDELINES RANGES

The most accurate method of calculating the applicable guidelines range is through the use of the infringed items retail cost. The United States contends that the loss value of $700,000 does not over-represent the total figure for which the defendants should be held liable. This figure-$700,000-corresponds to an increase in the base offense level of 14. U.S.S.G. § 2B1.1(b)(1)(J).

5

Accordingly, the United States urges this Court to find the applicable guidelines ranges as follows:

a. Defendant Wolff: base offense level of 8, pursuant to U.S.S.G. § 2B5.3(a), plus special offense characteristic of 14, pursuant to U.S.S.G. § 2B1.1(J), plus special offense characteristic of 2, pursuant to U.S.S.G. § 2B5.3(b)(3)(A), minus three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of 21. The resulting guidelines range is 37-46 months.

a. Defendant Lundgren: base offense level of 8, pursuant to U.S.S.G. § 2B5.3(a), plus special offense characteristic of 14, pursuant to U.S.S.G. § 2B1.1(J), plus special offense characteristic of 2, pursuant to U.S.S.G. § 2B5.3(b)(3)(A), minus three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of 21. The resulting guidelines range is 37-46 months.

Pursuant to the Plea agreements and subsequent agreements with Wolff and Lundgren, the United States agrees that although not binding on the probation office or the Court, the United States agrees that if the Court determines that the applicable Sentencing Guidelines total offense level is greater than 15, the United States agrees to recommend a downward variance to total offense level 15.  Under any circumstances, the Government agrees to recommend a sentence of no greater than 18 months' incarceration for both Wolff and Lundgren.

## **REASONABLE SENTENCE**

The United States suggests that a sentence of 18 months' incarceration for Wolff and Lundgren is appropriate in this matter. The United States may file a 5K1.1 motion on behalf of Wolff for substantial assistance in this case. If the United States does file such a motion, it would recommend a sentence below 18 months' incarceration. This sentence is commensurate with that amount of loss to Microsoft and is reasonable. The evidence in this case demonstrates that this was a conspiracy that was long term and extensive. It involved the manufacture of at least 29,000 discs containing Microsoft's intellectual property in China and the importation of those discs into the United States. This is an important case for many reasons.

U.S. companies suffer substantial losses from international trade in counterfeit and pirated goods, which the OECD has estimated to amount to hundreds of billions of dollars each year. *See Organization for Economic Cooperation and Development, Magnitude of Counterfeiting and Piracy of Tangible Products: An Update* (November 2009); *Frontier Economics, Estimating the Global Economic and Social Impacts of Counterfeiting and Piracy* (February 2011) (suggesting the value of counterfeit and pirated products for G20 nations was $650 billion in 2008 and likely to more than double by 2015).

Although quantifying the economic effects of counterfeit and pirated goods with precision is difficult, the problem is enormous with substantial consequences: to industry in the form of lost sales, lost brand value, and reduced incentives to innovate;

to consumers who purchase counterfeit goods; to governments which may lose tax revenue and face risks of counterfeits entering national security or critical infrastructure supply chains; and to economic growth slowed by reduced innovation and lost trade revenue. *See U.S. Government Accountability Office, Intellectual Property: Observations on Efforts to Quantify the Economic Effects of Counterfeit and Pirated Goods* (Publication Number GAO-10-423) (April 2010).

## Conclusion

Wherefore, the government respectfully requests that the court find that the total value of the infringed items is $700,000 resulting in a total offense level of 21.

Respectfully submitted,

BENJAMIN GREENBERG
ACTING UNITED STATES ATTORNEY

 s/LOTHROP MORRIS
By: LOTHROP MORRIS
    ASSISTANT U.S. ATTORNEY
    Florida Bar # 0095044
    500 Australian Avenue, Suite 400
    West Palm Beach, FL 33401
    (561) 820-8711
    (561) 820-8777 (FAX)
    LOTHROP.MORRIS@USDOJ.GOV

## Certificate of Service

      I HEREBY CERTIFY that on May 12, 2017, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

                              S/ LOTHROP MORRIS
                              LOTHROP MORRIS
                                ASSISTANT UNITED STATES ATTORNEY