UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-80090-CR-HURLEY

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

CLIFFORD ERIC LUNDGREN,

       Defendant.
_____/

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

    Defendant Eric Lundgren respectfully submits this Memorandum in Aid of Sentencing. Mr. Lundgren's sentencing is scheduled for May 22, 2017. For the reasons stated below, Mr. Lundgren asks the Court to impose a non-incarcerative sentence ("the requested sentence"). Mr. Lundgren submits that the requested sentence is a reasonable sentence that is sufficient but not greater than necessary to achieve the objectives listed in 18 U.S.C. §3553(b). Most significantly, it accurately reflects that the instant offense, which Mr. Lundgren committed at a young age, is an aberrant episode. Put simply, Mr. Lundgren has demonstrated that today he is not the same person who committed these crimes 5 years ago. He has built a successful business that employs over one hundred people, become a responsible contributing member of society, a philanthropist social entrepreneur, and a respected leader in the innovative field of Hybrid Electronic Recycling. Mr. Lundgren prays that the Court give him the chance to continue on his positive trajectory.

{6696348:}

## DISCUSSION OF THE 18 U.S.C. 3553 FACTORS

Title 18, United States Code, Section §3553(a) contains the factors the Court must apply in devising a reasonable sentence.  Importantly, this statute contains "an overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing under that provision." *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).  The §3553(a) factors are:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. §3553(a)(1)-(7).

"It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).  In fashioning a reasonable sentence, the Court has considerable discretion to weigh each of the §3553(a) factors.  Unless otherwise limited by law, the Court may consider, without limitation, any "information concerning the background, character, and conduct of" the defendant. 18 U.S.C. §3661; U.S.S.G. §1B1.4.

The ultimate goal is a reasonable sentence, *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005), and one which is no greater than necessary. 18 U.S.C. §3553(a).  A sentencing

court "must not presume that the Guidelines range is reasonable" but instead "must make an individualized assessment based on the facts presented." *Id*. "There are . . . many instances where the Guideline range will not yield a reasonable sentence." *United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006); *see also Nelson v. United States*, 129 S. Ct. 890, 892 (2007) (holding that "the Guidelines are not only *not mandatory* on sentencing courts; they are *not presumed reasonable*")(emphasis in the original). It is the sentencing court's duty to "make its own reasonable application of the 3553(a) factors, and to reject the advice of the Guidelines" if after due consideration the result they suggest does not comport with the sentencing court's view of an appropriate sentence. *Kimbrough*, 128 S. Ct at 577 (Scalia concurring).

## THE SECTION 3553(a) FACTORS

### The Nature And Circumstances Of The Offense

In 2011, at the age of 27, Mr. Lundgren was living in China and operating a business called Source Captain, Inc. Lundgren was contacted by co-defendant Robert Wolff through a mutual friend. Wolff asked for Lundgren's help in reproducing Dell Reinstallation disks that Wolff planned to sell to Dell computer refurbishers. Wolff represented that he had acquired an authentic reinstallation disk from Dell.

At the time relevant to these offenses, Dell computers came with a Microsoft operating system pre-installed. Dell installed these operating systems pursuant to a license from Microsoft, for which Dell paid a fixed amount. The computer's purchaser also received a license to use the Microsoft operating system; this license was included in the price of the Dell computer. As part of the price for the computer, the purchaser of the Dell computer also received a Reinstallation

Disk[1]. For example, a user might need the disk to reinstall the operating system as part of routine system maintenance, because of a virus, or because the operating system crashed. The Reinstallation Disk contained certain Dell software that allowed it to interface with the Dell computer hardware; it also included the Microsoft operating system software that originally came with the laptop. The Dell software automatically booted up when the Reinstallation Disk was inserted into a Dell computer, and offered the user the option to reinstall the Microsoft operating system. The user could not activate the Microsoft operating system unless the user already had purchased a valid and active license from Microsoft.

Mr. Lundgren believed that if the owner of a Dell computer lost their Reinstallation Disk, they could obtain a replacement from Dell for free. Mr. Lundgren was aware that there were also numerous other websites that offered either physical Reinstallation Disks or downloadable reinstallation software, some for free[2]. Wolff told Mr. Lundgren that Wolff had acquired an authentic Reinstallation Disk directly from Dell. Wolff further said that he had wanted to sell copies of this authentic Dell Reinstallation disk to computer refurbishers who would include the disks in the retail box with refurbished Dell computers[3].

Mr. Lundgren understood that Wolff had connections with large computer refurbishers. Even though these refurbishers could have downloaded individual Reinstallation Disks for free over the Internet, Mr. Lundgren believed that they were willing to pay a few dollars each for

---

[1] Dell no longer includes reinstallation disks with its computers. The reinstallation software is pre-loaded on a segregated partition of the computer's hard drive.

[2] Attached as Exhibit 1 is a summary of on-line locations that offer free Reinstallation Disks.

[3] Refurbishers purchase, repair and re-sell used Dell computers.

disks in bulk, in order to save the materials, energy and time needed to make the disks themselves.

Mr. Lundgren took the disk he received from Wolff to an electronics broker in China, who duplicated the disk. The duplicated disks included a label that was substantially indistinguishable from the labels that were affixed to authorized Reinstallation Disks.

Mr. Lundgren knew he was not authorized to reproduce and re-sell the disks. He also knew that he was not authorized to place a label on the disk that purported it to be an authentic Dell Reinstallation Disk. Nevertheless, Mr. Lundgren justified his actions to himself on the theory that the unauthorized disks contained software that was identical to the authentic disks, so they would be fully operational, and (because the disks could be obtained individually for free) there would be no financial loss to Dell or Microsoft. Mr. Lundgren also believed that including these disks in the retail box with the refurbished computer would help a consumer who may not have known how to download and burn a disk for free from the Internet.

The offenses of conviction were non-violent crimes. The financial benefit to Mr. Lundgren was small. He received only approximately $45,000 in gross revenue and $13,000 in net profit.

### History And Characteristics Of The Defendant[4]

Eric Lundgren is a 32 year old single man with no children. Mr. Lundgren had three minor convictions when he was 18 years old. Other than the instant offense, he has no criminal convictions since then. He devotes almost all of his time to social entrepreneurship, that is, promoting business practices that are both profitable and socially beneficial.

---

[4] Under separate cover, Mr. Lundgren is submitting letters from friends, family, and business associates.

As was discussed during his change of plea colloquy, Mr. Lundgren has been a self-employed entrepreneur since he was 16 years old. Most recently, beginning in 2013, Mr. Lundgren started an electronics recycling company (ITAP, Inc.) that now employs over 110 people. His current business has nothing to do with manufacturing or importing computer disks or with other actions that were part of the crimes of conviction. Rather, his company is the first hybrid recycler in the United States; processing over 41,000,000 pounds of electronic waste in the United States annually. Hybrid recycling involves taking apart a recycled item, using the good parts for new applications, minimizing the amount that goes into landfill, and disposing of any waste in an environmentally-sound manner[5]. The company is an approved and authorized electronics recycler for Nintendo, IBM, Motorola, LENOVO, Alcatel, TCL, Sprint, F.C.A, T.W.C, Samsung, Ingram Micro, LG, Verizon and many more. Notably, despite knowing the offenses to which Mr. Lundgren has pled, customers continue to do business with ITAP.

By way of example, ITAP sells screens and memory chips from old cellphones to companies that incorporate them into smart-video doorbell units. ITAP and its business partners also convert used laptop batteries into new cellphone chargers, broken Electric Vehicle batteries into smart-grid solar power arrays and old cable-box batteries into eWheelchairs. These new products are sold around the world. Mr. Lundgren passionately believes that current electronic waste management practices in the United States are wasteful and harmful to society. His self-professed purpose in life is to keep hazardous electronics out of landfills by repairing or re-using all working components.

Through ITAP, Mr. Lundgren also investigates and develops innovative uses for recycled parts. At **https://www.youtube.com/watch?v=InWSsghejdE** the Court can see a recent project

---

[5] Attached to this Memorandum as Exhibit 2 are materials that describe ITAP's business practices in more detail, as well as ITAP's innovative recycling projects.

where ITAP built an alternative energy electric vehicle from 88% recycled consumer waste; that vehicle went 340 miles on the highway on a single charge.

Mr. Lundgren is the face of ITAP and the sole person involved in daily global procurement for the company.  ITAP's ability to function and to acquire inventory is wholly dependent on Mr. Lundgren's personal relationships with electronics manufacturers, retailers and service providers.  Mr. Lundgren is a recognized leader in his industry.  For example, he was recently a speaker at two significant conferences where he explained efficient hybrid recycling concepts to the CEO's of Fortune 500 Companies such as SAP, Slack, and IPsoft.  Should Mr. Lundgren be incarcerated and unable to continue operating the company, ITAP will likely go out of business, its employees will lose their jobs, and its customers will lose a unique resource for electronic waste disposal.

In addition to operating a socially-responsible company, Mr. Lundgren has a long history of charitable works.  Attached as Exhibit 3 is a summary of some of his most significant efforts.  Beginning when he was still in high school, Mr. Lundgren has participated in Habit For Humanity projects, donated electronic equipment to sheltered women and children, assisted the Government of Ghana with toxic waste disposal problems, been the benefactor for a shanty town in India, donated electronics to the military and to educational pursuits, and much more.

**The Need For The Sentence To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment**

The offense of conviction was the sale of Reinstallation Disks containing labels that falsely represented that the disks were manufactured by an authorized manufacturer. Mr. Lundgren submits that the requested sentence sends the proper message that this kind of conduct will be punished appropriately, but not excessively.  Respect for the law is undermined both by

sentences that are too short and sentences that are too long. The requested sentence is a just punishment.

### The Need To Afford Adequate Deterrence To Others

The Court should give some, but limited, weight to this sentencing factor. This factor incorporates the concept of general deterrence, or "sending a message" to others that this kind of behavior is unacceptable and will be punished. In applying this factor, the Court must balance the need to impose a sentence that is severe enough to deter others with the need to not unduly punish Mr. Lundgren. General deterrence looks to what punishment is necessary to persuade others not to commit similar crime. As such, it allows for punishment that is disproportionately greater than what is necessary to punish and deter the specific offender. For that reason, if this factor is given too much weight, it can undercut respect for the law by sending the message that the unlucky individual who gets caught will be overly punished whereas the offender who does not get caught will not be punished at all.

Here, an incarcerative sentence is not necessary to send the appropriate message. Mr. Lundgren is a well-known figure in his industry. It is widely known in the industry that he is being prosecuted. Moreover, the marginal difference between the requested sentence and the Government's recommended sentence is unlikely to materially diminish the deterrent effect of the sentence. For these reasons, the Court should give limited weight to this sentencing factor.

### The Need To Protect The Public

This sentencing factor incorporates the concept of direct deterrence, that is, the need to prevent future crimes by Mr. Lundgren. The Court should give this factor very little weight.. There is every reason to believe that Mr. Lundgren will be a law-biding citizen in the future.

Most probative of this fact is the maturity and personal growth exhibited by the way that Mr. Lundgren has lived his life since 2013.

### The Need To Provide The Defendant With Educational Or Vocational Training Or Medical Care

Mr. Lundgren has no specialized educational, medical or vocational needs.

### The Kinds Of Sentences Available

Title 18, United States Code, permits the Court to impose several different kinds of sentences, ranging from probation and home detention to a period of incarceration. The Presentence Report concludes that Mr. Lundgren has the ability to pay a fine within the Guideline range. As the PSI demonstrates, however, Mr. Lundgren's most significant assets are illiquid. He is continuing to reinvest most of his funds into building his company. Therefore, Mr. Lundgren asks that, if the Court imposes a fine, that fine be at the low end of the fine range and allow him to make payments over time.

### The Sentencing Guidelines Range And The Pertinent Policy Statements Of The Sentencing Commission

Using Guideline §2B5.3, the PSI computes an advisory sentencing range of 37-46 months based on a Total Offense Level 21 and criminal history category I. Mr. Lundgren has filed objections to the Guidelines calculation. The Government is recommending a sentence of 18 months, corresponding to a Total Offense Level 15 and criminal history category I.

Application note 5(C) to Guideline §2B5.3 states:

5. Departure Considerations.—If the offense level determined under this guideline substantially understates or overstates the seriousness of the offense, a departure may be warranted. The following is a non-exhaustive list of factors that the court may consider in determining whether a departure may be warranted:

…

(C) The method used to calculate the infringement amount is based upon a formula or extrapolation that results in an estimated amount that may substantially exceed the actual pecuniary harm to the copyright or trademark owner.

Mr. Lundgren submits that the infringement amount computed by the PSI, if correct, substantially overstates the actual pecuniary harm to the copyright and trademark owner. By agreeing to a downward variance from the Guideline corresponding to that amount, the Government appears to agree. Depending on the results of the valuation hearing, Mr. Lundgren may further assert that a downward departure under Application Note 5(C) is warranted.

### The Need To Avoid Unwanted Sentencing Disparities

Mr. Lundgren's co-defendant Robert Wolff will be sentenced on the same day as Mr. Lundgren. Mr. Wolff initiated the instant offenses and recruited Mr. Lundgren to join them. It is anticipated that Wolff will receive a 5K1.1 motion for substantial assistance for his cooperation against Mr. Lundgren.

Other individuals who sold unauthorized copies of more valuable software were either not prosecuted at all, or received sentences less than 18 months. For example, in *United States v. Inder Deot,* 01-CR-333 (N.D. Tx. 2002), the defendant was part of a conspiracy to manufacture and sell over 200,000 unauthorized copies of Windows 95 software, with a retail value of over

$41,000,000. The conspirators, including Deot, provided counterfeit manuals, packaging materials, certificates of authenticity, and trademarks. Deot was sentenced to 8 months imprisonment and ordered to pay $10,000,000 in restitution. His co-defendant was sentenced to 27 months and ordered to pay $14,296,000 in restitution.

In *United States v. Casey Lee Ross,* 15-CR-196 (W.D. Mo. 2015), the defendant was part of a six-year $100,000,000 fraud scheme to sell over 170,000 counterfeit copies of Microsoft and Adobe software, complete with valid registration codes and certificates of authenticity. Ross was sentenced to 5 years of probation.[6]

In *Microsoft Corp. v. EZPC Recycling, Inc and Miguel Bautista,,* 14-CV-986 (C.D. Ca. 2014), the defendants sold refurbished computers containing unauthorized copies of Windows Vista. They persisted in this conduct even after receiving a cease-and-desist letter from Microsoft. The case was pursued as a civil copyright and trademark action, without a criminal prosecution.

There are numerous other example, worldwide, where infringers of software trademarks and copyrights have not been prosecuted, even though their conduct was much more egregious than the conduct here.

### The Need To Provide Restitution To Victims

As noted in his Objections to the Presentence Report, Mr. Lundgren contests whether restitution is owed and, if so, the amount of any restitution.

### CONCLUSION

Neither the advisory Guideline range nor the Government's recommendation accurately reflects Mr. Lundgren' individual culpability; they do not balance the §3553 factors in a way that

---

[6] Although not entirely clear from the docket sheet, it appears that Deot and Ross received a sentencing reduction for cooperation. This option was not available to Mr. Lundgren.

{6696348:}                                           11

results in a sentence that is sufficient but not greater than necessary to achieve the goals of §3553. Mr. Lundgren's actions in the five years since this offense demonstrate that he has learned from his errors and is capable of being a productive, job creating, law-biding, tax paying member of society. Balancing all the §3553 factors, a period of incarceration would not be a sentence that is sufficient but not greater than necessary to achieve the goals of federal sentencing. Mr. Lundgren prays that he be given the opportunity to continue to run and grow his company, keep his employees working, keep supporting charitable organizations around the world, continue to develop innovative uses for recycled materials, and continue to contribute in a positive way to society.

**WHEREFORE**, it is respectfully requested that the Court impose a non-incarcerative sentence, and a fine (if any) at the low end of the fine range.

Respectfully submitted,

 /s/ Bruce E. Reinhart
BRUCE E. REINHART
Florida Bar No. 10762
McDonald Hopkins LLC
505 S. Flagler Drive, Suite 300
West Palm Beach, FL 33401
Telephone: (561) 472-2970
Facsimile: (561) 472-2122
breinhart@mcdonaldhopkins.com


/s/Lilly Ann Sanchez
THE LS LAW FIRM
lsanchez@thelsfirm.com
Four Seasons Tower – Suite 1200
1441 Brickell Avenue
Miami, Florida 33131
Telephone: 305-503-5503

Counsel for Clifford Eric Lundgren

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 18, 2017, I electronically filed the foregoing Memorandum in Aid of Sentencing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record and on U.S. Probation Officer Nicole Pender, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Bruce E. Reinhart